# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| SUSAN A. PENDLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:09-CV-2240-VEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Susan A. Pendleton ("Ms. Pendleton") brings this action pursuant to

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's residual functional capacity ("RFC") determinations from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RFC finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same); *Shelton v. Astrue*, No. 5:09-CV-1253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-1591-VEH (Docs. 20, 21) (N.D. Ala. Oct. 25, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-2191-VEH (Docs. 12, 13) (N.D. Ala. Oct. 28, 2010) (same); *Mosley v. Astrue*, 4:10-CV-0189-VEH (Docs. 13, 14) (N.D. Ala. Nov. 15, 2010) (same); *Lavelle v. Astrue*, No. 5:09-CV-2571-VEH (Docs. 12, 13) (N.D. Ala. Nov. 15, 2010) (same); *Howard v. Astrue*, No. 3:10-CV-527-VEH (Docs. 15, 16) (N.D. Ala. Dec. 16, 2010) (same).

42 U.S.C. § 416(i), § 216(i) of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Pendleton timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Pendleton was a 48-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on April 9, 2009. (Tr. 35, 28). Ms. Pendleton graduated from high school, but she did not attend college. (Tr. 36). Her prior work experience includes employment as a cashier/checker, a head janitor, and a cafeteria attendant. (Tr. 49, 51).

Ms. Pendleton protectively applied for DIB on January 16, 2007. (Tr. 11, 56). In her disability application, Ms. Pendleton maintains that she became disabled on May 31, 2002, due to ischemic heart disease and depression. (Tr. 11, 56). The claim was denied initially on March 23, 2007. (Tr. 11, 56).

Ms. Pendleton timely filed a request for a hearing that was received by the Social Security Administration on March 29, 2007. (Tr. 11, 64). At the April 9, 2009, hearing, Ms. Pendleton amended her alleged disability onset date to May 31,

2006. (Tr. 11, 35).

On May 15, 2009, the ALJ concluded Ms. Pendleton was not disabled as defined by the Act and denied her DIB application. (Tr. 11-24). Ms. Pendleton then submitted a request for review of the ALJ's decision on May 27, 2009. (Tr. 5-6). On September 1, 2009, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Ms. Pendleton. (Tr. 8).

On November 4, 2009, Ms. Pendleton initiated her appeal with this court asking for review of the ALJ's decision. (Doc. 1). On March 23, 2010, Ms. Pendleton filed a brief (Doc. 9) in support of her appeal, and on April 22, 2010, the Commissioner followed with his responsive brief. (Doc. 10). No reply brief was filed. This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572,

1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 17, 2011.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Pendleton had not engaged in substantial gainful activity since the amended alleged onset date of her disability, *i.e.*, May 27, 2006. (Tr. 13 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant ha[s] the following severe impairments: coronary artery disease, diabetes mellitus, hyperlipidemia, hypertension, obesity, and depression." (Tr. 13 ¶ 3 (citations omitted)). Accordingly, the ALJ concluded that Ms. Pendleton satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Pendleton did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18 ¶ 4). Ms. Pendleton does not challenge this determination on appeal.

The ALJ then evaluated Ms. Pendleton's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could have occasionally lifted and carried 20 pounds and frequently lifted and carried 10 pounds. Claimant would have required a sit/stand type of job where she could sit for 30 minutes at a time and stand for 30 minutes and walk for approximately

15 minutes. The claimant had no limitation in her ability to push and pull as in the operation of hand or foot controls. Claimant could have occasionally climbed ramps and stairs, balanced, stooped, knelt, and crouched, but she could have never crawled, or worked on ladders, ropes, or scaffolding. The claimant should have avoided being around concentrated exposure to cold and heat, and being around hazardous machinery, or unprotected heights. Due to the claimant's depression, she would have the capability of understanding and remembering simple instructions, but not detailed or complex instructions. Claimant was able to sustain concentration of 2-hour periods across 8-hour workday, and she was able to complete a regular workday at an acceptable pace and with an acceptable attendance schedule.

(Tr. 19 ¶ 5).[3] Further, the ALJ accepted the testimony of the vocational expert that at this RFC-reduced light level, the claimant was unable to perform her past relevant employment as a cashier/checker, head janitor, and cafeteria attendant. (Tr. 22; Tr. 22 ¶ 6).

---

[3] The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through October 28, 2010).

Because of the ALJ's finding that Ms. Pendleton was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 23). Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Ms. Pendleton was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 23). Examples of such possible light jobs included employment as a ticket marker, a photocopy operator, and a mail sorter. (*Id.*). Accordingly, the ALJ concluded Ms. Pendleton was not disabled as defined by the Social Security Act, and denied her DIB claim. (Tr. 23-24; Tr. 23 ¶ 11).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In

particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]

In this appeal, Ms. Pendleton primarily contends that "the ALJ did not properly assess Plaintiff's credibility consistent with the Regulations." (*See* Doc. 9 at 6). The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Ms. Pendleton is capable of performing light work with additional restrictions given her collection of severe physical and mental impairments and agrees with Ms. Pendleton that, under the circumstances of her case, the ALJ committed reversible error.[5]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5] As a result, the court does not reach the merits of Ms. Pendleton's Eleventh Circuit Pain Standard argument or any other issues presented on appeal.

**I.  IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MS. PENDLETON'S COLLECTION OF SEVERE IMPAIRMENTS, THE ALJ'S PHYSICAL RFC DETERMINATION THAT SHE CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of his physical RFC determination, the ALJ expressly relies upon Exhibit 10F. The court has studied Exhibit 10F and concludes that it does not substantially support the ALJ's physical RFC determination for several different reasons.

Exhibit 10F is a "Medical Report" that was prepared by consultative examiner Dr. John Lary ("Dr. Lary") on March 19, 2007. (Tr. 400-04). In this Medical Report, Dr. Lary lists the diagnoses that he considered when preparing his assessment of Ms. Pendleton. Absent from this list is Ms. Pendleton's obesity condition, an impairment which the ALJ found was severe. (Tr. 13 ¶ 3 (including obesity)). Therefore, to the extent that the Medical Report includes any job-related opinions about Ms. Pendleton, it is flawed because it omits a severe impairment from the analysis.

Another problem with the ALJ's reliance upon Exhibit 10F is that it lacks any unambiguous analysis of Ms. Pendleton's ability to work despite her collection of severe impairments. In the "Discussion" section of the Medical Report, Dr. Lary, murkily opines:

10

> Her ability to engage in physical activity is limited by her heart disease. In my opinion, except for the exertional limitations imposed by her heart disease, her ability to sit, stand, walk, lift, carry, bend, squat, reach, see, hear, speak, understand, and manipulate small objects is unimpaired.

(Tr. 404).

The above assessment does not suggest what Ms. Pendleton's exertional limitations should be in light of heart disease. It also does not speak to whether any non-exertional limitations would be appropriate due to her heart disease. It further fails to acknowledge the impact that Ms. Pendleton's other diagnosed severe impairments would have on her physical ability to work. Additionally, Exhibit 10F includes no physical capacities evaluation of Ms. Pendleton; instead, most of the medical information reported by Dr. Lary is done so rawly. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

Furthermore, Defendant has not pointed to (*see generally* Doc. 10) a medical source opinion[6] or a physical capacities evaluation conducted by a physician that

---

[6] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what

11

substantiates Ms. Pendleton is capable of performing a reduced range of light work given her severe physical impairments of coronary artery disease, diabetes mellitus, hyperlipidemia, hypertension, and obesity. Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These

---

an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To meet such a prima facie case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Pendleton's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Ms. Pendleton is not able to perform relevant past work given

the additional job-related restrictions that the ALJ placed on her at the light exertional level. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Pendleton by a physician that corroborates the ALJ's determination that she has the ability to perform light work with certain exertional as well as non-exertional restrictions despite her severe physical impairments of coronary artery disease, diabetes mellitus, hyperlipidemia, hypertension, and obesity, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record,

despite his obligation to develop a complete medical history.") (citations omitted).

Likewise, the ALJ's determination that Ms. Pendleton can physically perform light work with certain limitations is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## II. The ALJ's Mental RFC Determination Is Also Deficiently Supported.

Regarding Ms. Pendleton's mental work-related limitations, the ALJ specifically concluded:

> Due to the claimant's depression, she would have the capability of understanding and remembering simple instructions, but not detailed or complex instructions. <u>Claimant was able to sustain concentration of 2-hour periods across 8-hour workday, and she was able to complete a regular workday at an acceptable pace and with an acceptable attendance schedule</u>.

(Tr. 19 ¶ 5 (emphasis added)). In formulating restrictions relating to Ms. Pendleton's mental RFC, the ALJ stated that he gave the opinion of Dr. William David McDonald ("Dr. McDonald") "[s]ome weight" and assigned "little weight" to the assessments given by the State Agency medical consultant and disability examiner as "neither examined nor treated the claimant and they did not have an opportunity to review the medical records submitted at the hearing level." (Tr. 22).

The record does not reflect that Dr. McDonald performed a mental capacities

evaluation of Ms. Pendleton.  (*See generally* Tr. 395-98)).  Instead, Dr. McDonald gave a more generalized opinion regarding Ms. Pendleton's vocational abilities in light of her depressed mental condition and expressly indicated:

> She seems capable of understanding, carrying out, and remembering simple instructions and also generally capable of interacting appropriately with others.  <u>Her ability to manage work pressures is likely to be limited by her fatigue and depressive symptoms</u>.  She seems capable of managing any financial benefits that she may receive.

(Tr. 397-98 (emphasis added)).

Therefore, the mentally-related restrictions that the ALJ ultimately placed on Ms. Pendleton do not match those that Dr. McDonald suggested.  (*Compare* Tr. 19 ¶ 5 ("Claimant was able to sustain concentration of 2-hour periods across 8-hour workday, and she was able to complete a regular workday at an acceptable pace and with an acceptable attendance schedule.") *with* Tr. 398 ("Her ability to manage work pressures is likely to be limited by her fatigue and depressive symptoms.")). Moreover, the ALJ did not explain why he deviated from Dr. McDonald's opinion after he assigned some weight to it.  Further, the ALJ's decision did not point to any alternative underlying physician-developed opinion (and the court also has not been able to locate such proof based upon its own review) which corroborates his conclusions about the degree to which Ms. Pendleton should be mentally restricted

in her work due to her severe impairment of depression.[7]

Instead, akin to the physical RFC, it appears that the ALJ derived the mental vocational limitations for Ms. Pendleton based upon his layman's review and interpretation of the raw medical information that he found in the record. Alternatively, it appears that the ALJ arbitrarily arrived at Ms. Pendleton's mental RFC and additional limitations without the benefit of any corroborating functional proof provided by a physician. Accordingly, the mental component of the ALJ's RFC determination is also not supported by substantial evidence, and a remand to the Commissioner is appropriate due to this additional reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

---

[7] The court observes that to the extent the ALJ properly assigned "significant weight" to Dr. Lary's opinions, they cannot provide substantial support for Ms. Pendleton's mental RFC because Dr. Lary's conclusions were expressly limited to Ms. Pendleton's ability to engage in <u>physical activities</u>. (Tr. 404 ("Her ability to engage in physical activity . . . .")).

**DONE** and **ORDERED** this the 10th day of March, 2011.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge